IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:07-CR-152-D |
| VS. | § | |
| | § | |
| KYLE BRANDON McMAHAN, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Kyle Brandon McMahan ("McMahan") moves to suppress all evidence—including methamphetamine and a firearm—seized incident to his arrest following a traffic stop. For the reasons that follow,[1] the court denies the motion.

I

On the night of July 25, 2006, Officer Blake Cunningham ("Officer Cunningham"), a 20-year veteran of the Irving Police Department ("IPD"), was working a special assignment for drugs and prostitution. An IPD dispatcher received an anonymous telephone tip that a man named "Carl Black" was dealing drugs at the MainStay Suites Hotel, located in Irving. The information was relayed to Officer Cunningham, who made contact with the hotel's front desk clerks. The clerks provided a description of the man and of Angela Diane Robison ("Robison"), and they reported that they had seen them together in a silver Dodge pickup truck. They also reported

---

[1]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in this memorandum opinion and order its essential findings.

suspicious activity in the room registered to Robison.

Officer Cunningham ran a computer check on Robison and also requested the assistance of other IPD officers. Officer Christian Williams ("Officer Williams") arrived at around 9:50 p.m., and Officer Graham Smith ("Officer Smith") arrived shortly thereafter. Both were working in plain clothes.

The computer check showed that Robison had been the subject of a search warrant that had resulted in the seizure of stolen guns, narcotics, and a police scanner. A vehicle registration check was run on the pickup, which showed that it was registered to McMahan. Officer Cunningham also ran a computer check on McMahan, which showed a history of drugs, but no outstanding arrest warrants.

Officer Cunningham was still deciding how to proceed with his investigation when Officer Williams radioed him that the pickup was leaving the hotel parking lot. Officer Cunningham in turn advised Officer Smith and provided him with a description of the vehicle. At the time, the officers did not know whether the vehicle occupant was "Carl Black," McMahan, or a third person.

Officer Smith, who was driving an unmarked civilian car, began following the pickup. He was responsible for observing the vehicle or developing reasonable suspicion or probable cause to stop the pickup. Officer Smith was also to observe where the driver was going and whether he was engaged in any drug transaction or other illegal activity. Officer Cunningham was driving 200 to 300 yards

behind Officer Smith.

Eventually, the pickup entered the Airport Freeway (State Highway 183) going eastbound. Shortly thereafter, at approximately 10:10 to 10:15 p.m., Officer Smith observed McMahan drive on the improved shoulder of the freeway for a period of approximately three to five seconds. The right rear tire of the vehicle crossed the line marker so that the tire was two to three inches over the line and into the shoulder of the highway. Officer Smith concluded that McMahan had violated Tex. Transp. Code Ann. § 545.058 (Vernon 1999), which, with exceptions not pertinent here,[2] prohibits driving on an improved shoulder. Assuming that McMahan was operating his vehicle at the speed limit, the pickup remained on the shoulder for approximately 100 feet, or 8 to 10 car lengths. It appeared to Officer Smith that the driver of the vehicle was

---

[2]Section 545.058(a) provides exceptions in the following seven circumstances:

> (1) to stop, stand, or park;
> (2) to accelerate before entering the main traveled lane of traffic;
> (3) to decelerate before making a right turn;
> (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
> (5) to allow another vehicle traveling faster to pass;
> (6) as permitted or required by an official traffic-control device; or
> (7) to avoid a collision.

The government introduced evidence to establish, and the court finds, that no exception applied to McMahan's conduct.

either distracted or impaired.  Officer Smith radioed Officer Cunningham that he had observed the driver of the pickup commit a traffic violation.

Based on the information Officer Smith provided, Officer Cunningham (who did not personally observe the traffic violation) effected a stop of McMahan's vehicle.  The officer approached the pickup from the passenger side.  After McMahan lowered the window, Officer Cunningham requested his driver license and insurance information. Officer Cunningham observed that McMahan had a tattoo on his arm of the name "Angela Diane," which were the first and middle names of the woman who was under surveillance at the hotel. He also observed an antenna under the center armrest. When Officer Cunningham inquired about the antenna, McMahan responded that it was a police scanner that did not work.  McMahan also provided valid identification to Officer Cunningham, who already knew McMahan had a valid driver license, and that there were no outstanding warrants for his arrest.  Officers ask questions to which they already know the answers because they are attempting to determine whether a person is being deceitful.

McMahan appeared to Officer Cunningham to be very nervous.  He engaged in agitated movements, at rapid speed, and appeared to be ready to run.  Officer Cunningham radioed for backup and asked McMahan to exit his vehicle.  He made this request of McMahan based on McMahan's demeanor—mainly out of concern that McMahan could

flee or have access to secreted weapons.  It appeared to the officer that McMahan could at any moment throw the vehicle in gear and take off.

At the rear of the pickup, Officer Cunningham asked McMahan whether he had ever been arrested, and McMahan responded that he was on parole for possession of methamphetamine.  The purpose for asking questions was to see whether McMahan was impaired.  Officer Cunningham observed signs of methamphetamine or some other drug usage.  McMahan continued to appear nervous, and he kept sticking his hands in his pockets.  It was necessary for Officer Cunningham to instruct McMahan three times to keep his hands out of his pockets.  The officer believed that McMahan posed an imminent threat.  He was concerned for his personal safety and that McMahan might destroy evidence.

The two were at the rear of the vehicle for 1 to 1½ minutes before the backup unit arrived.  At about that time, Officer Cunningham requested McMahan's consent to search his pickup, but McMahan refused.  The officer immediately placed McMahan under arrest for driving on the improved shoulder of the highway.  The arrest occurred approximately three to four minutes after McMahan was stopped. Aside from the traffic violation, Officer Cunningham based his decision to arrest McMahan on his belief that it was unsafe to permit McMahan to return to his vehicle and drive off, because he might have a weapon.  He also acted based on McMahan's

nervousness, his links to other people involved in suspicious drug activity, his criminal record, the information the hotel clerks had provided concerning suspicious activity, and information about people coming and going through a hotel window with a duffel bag. Officer Cunningham acknowledged, however, that had McMahan consented to a search and had the officer found nothing, McMahan would have been given a citation or warning and sent on his way.

Officer Cunningham then conducted a search of McMahan's person incident to the arrest. He found a baggie of methamphetamine in one of his pockets and $1,960 in cash in the other, which he suspected based on the amount of money was drug related. McMahan then asked Officer Cunningham whether it was lawful for him to possess an unloaded weapon, and he also volunteered that there was a weapon in the truck. Officer Cunningham responded that it was unlawful for McMahan to possess a weapon because he was a convicted felon. McMahan also volunteered that there was more of "that stuff" in a black case under the seat, by the shotgun. During the search, McMahan's cell phone was ringing constantly, as it would were someone waiting for him.

About six minutes after the stop was effected, another IPD officer radioed for a wrecker. Officer Cunningham did not issue McMahan a traffic citation. When a class C misdemeanor leads to higher charges, IPD does not typically file the class C misdemeanor.

McMahan has been charged with one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(B), and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He moves to suppress all evidence seized as a result of his arrest and the search of the vehicle he was operating on July 25, 2006. The court conducted an evidentiary hearing on August 23, 2007.

II

> The Fourth Amendment protects individuals against unreasonable searches and seizures. Traffic stops are deemed seizures for the purposes of the Fourth Amendment. The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place. . . . For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. In scrutinizing the officer's basis for suspecting wrongdoing,

> it is clear that the officer's mere hunch will not suffice. It is also clear, however, that reasonable suspicion need not rise to the level of probable cause.

*United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal quotations marks and some citations omitted), *cert. denied*, 546 U.S. 1222 (2006).

The government bears the burden of establishing by a preponderance of the evidence two elements under *Terry*: that the stop was justified at its inception and that the Fourth Amendment intrusions were reasonably related in scope to the circumstance that justified the interference in the first place. *See United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003); *United States v. Riley*, 968 F.2d 422, 424-25 (5th Cir. 1992) (addressing warrantless search of home) ("Because a warrantless search is presumed to be unreasonable, the Government has the burden of proving that the warrantless search was conducted pursuant to an exception."). For a stop to be justified at its inception, "the officer [must have] a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "The concept of reasonable suspicion . . . is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *Sokolow*, 490 U.S. at 7 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). "[T]he facts giving rise to reasonable suspicion 'must be judged against

an objective standard.'" *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999) (quoting *Terry*, 392 U.S. at 21-22). "[T]he constitutional reasonableness of the stop does not depend upon the actual motivations of the officer involved." *Sanchez-Pena*, 336 F.3d at 437. "[A]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," even if that violation is not the officer's actual motive for making the stop. *Whren v. United States,* 517 U.S. 806, 810, 813 (1996); *Sanchez-Pena*, 336 F.3d at 437.

III

The court considers first whether the government has met its burden of proof as to the first *Terry* element.

A

Driving on an improved shoulder is an offense under Tex. Transp. Code Ann. § 545.058. Accordingly, when Officer Smith observed McMahan drive on the improved shoulder of the Airport Freeway a period of approximately three to five seconds, with the right rear tire of his vehicle crossing the line marker so that the tire was two to three inches over the line and into the shoulder, he had reasonable suspicion, if not probable cause, to believe that McMahan had committed a traffic violation. Based on Officer Smith's personal observation of this offense, Officer Cunningham had reasonable suspicion, if not probable cause, to effect a

traffic stop. *See United States v. Lee,* 962 F.2d 430, 435 (5th Cir. 1992) (stating that it is not necessary for arresting officer to know all the facts amounting to probable cause, as long as there is some degree of communication between arresting officer and officer who has knowledge of all the necessary facts). The stop was therefore justified at its inception.

B

McMahan argues that the officers in fact intended to stop him for failing to maintain a single lane, in violation of Tex. Transp. Code Ann. § 545.060 (Vernon 1999). He posits that they lacked a legal basis to stop him for violating § 545.060 because they did not observe his vehicle move unsafely out of his lane. *See id.* (making movement out of single lane unlawful only if done unsafely); *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. Crim. App. 1998) (holding that violation of § 545.060 occurs only when vehicle fails to stay within its lane and such movement is not safe or is not made safely). He therefore maintains that the stop was not justified. The court disagrees.

Officer Cunningham testified credibly that he stopped McMahan based on Officer Smith's observation that McMahan had driven on an improved shoulder. This conduct violates a separate provision of the Texas Transportation Code: § 545.058. But assuming that Officer Cunningham in fact intended to stop McMahan for failing to maintain a single lane, this is of no moment, because the court

does not examine his subjective intentions. *See Lopez-Moreno*, 420 F.3d at 432 (relying on this principle to reject argument that, because police had used one statute as "post hoc rationalization" for mistakenly stopping someone under different statute, stop was unjustified). "Even if [Officer Cunningham's] subjective motivation for initiating the stop was his mistaken view that [McMahan] was violating [§ 545.060], the fact that it was objectively reasonable to suspect that [McMahan] was violating [§ 545.058] means that the initial stop passes constitutional muster." *Id.*

McMahan also asserted during closing argument that the Texas Legislature did not intend to make illegal under § 545.058 the conduct in which he had engaged. He maintains that § 545.060 rather than § 545.058 applies to this case, and that his conduct did not violate § 545.060. This assertion lacks force. Section 545.058(a) states in plain terms that it is only permissible in one or more of seven circumstances to "drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely." A preponderance of the evidence establishes that none of these circumstances is at issue here, and that McMahan committed a traffic violation.

Accordingly, the court holds that the government has met its burden of proving by a preponderance of the evidence that the traffic stop was justified at its inception.

IV

Under the second *Terry* element, the government must prove that Officer Cunningham's actions were reasonably related in scope to the circumstances that justified the stop. *See Lopez-Moreno*, 420 F.3d at 430. There is also a recognized exception to this rule when additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled. When this occurs, the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *Id.* at 431.

A

Generally, a "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* (quoting *United States v. Brigham,* 382 F.3d 500, 507 (5th Cir. 2004) (en banc)). In the course of effecting a stop, a police officer may permissibly examine the driver license and registration and run a computer check to investigate whether the driver has any outstanding warrants and whether the vehicle is stolen. *Id.* Once all relevant computer checks have come back clean, as a general matter, the purposes of the stop have been fulfilled, and continued detention is unconstitutional. *Id.* at 431. As noted, however, there is an exception to this rule that comes into play when additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled. When this occurs, the detention may continue until the new

reasonable suspicion has been dispelled or confirmed.  *Id.* Therefore, even if McMahan was detained longer than was necessary to check his driver license and insurance information, and run a computer check, there is no Fourth Amendment violation if—during the time it took to complete this process—Officer Cunningham developed additional reasonable suspicion that McMahan was, or was about to be, engaged in another form of criminal activity.  *See id.* at 430-31; *United States v.* Cortez, 449 U.S. 411, 417 (1981).

"[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."  *Lopez-Moreno*, 420 F.3d at 430.  It is well established that, when the court engages in a reasonable suspicion analysis, it must not isolate events or details in determining whether the police had reasonable suspicion. *See id.* at 430. Rather, the court must consider the totality of the circumstances.  *See, e.g., Sokolow,* 490 U.S. at 8.

B

McMahan maintained during closing argument that, at the time of the traffic stop, Officer Cunningham already knew that McMahan had a valid driver license and that there were no outstanding warrants for his arrest.  He contends that once he identified himself by name, address, and birth date, and barring any new information, the stop had to cease with an arrest or issuance of a

citation. McMahan complains that the officer had no basis to order him out of his vehicle for the purpose of developing additional reasonable suspicion or to ask him questions that were unrelated to the traffic stop, without any reasonable suspicion to do so. He also objects to the arrest and ensuing search on the ground that he was arrested only after he refused to consent to a search of his vehicle.

Considering the totality of the circumstances, the court finds that the government has met its burden of proof under a preponderance of the evidence standard. It has established that, before the expiration of the period when he was permitted to check McMahan's driver license and insurance, and for outstanding warrants, Officer Cunningham developed additional reasonable suspicion to detain McMahan until he arrested him for the traffic violation. Before the stop, Officer Cunningham knew that McMahan had an apparent connection to persons who were suspected of dealing drugs at a hotel, that one of the persons was Robison, that a silver Dodge pickup truck had been connected to the activities, and that the truck was registered to McMahan. He was also aware that Robison had been the subject of a search warrant that had resulted in the seizure of stolen guns, narcotics, and a police scanner, and that McMahan had a history of drugs. After Officer Cunningham effected the traffic stop, he learned almost immediately that McMahan had a police scanner under the center armrest. He observed

a tattoo on McMahan's arm of the name "Angela Diane," further connecting McMahan to Robison.  While McMahan was seated in his vehicle, he appeared to be very nervous, engaging in agitated movements, at rapid speed, and appeared to be ready to run. McMahan's demeanor was such that Officer Cunningham was concerned that McMahan could flee or have access to secreted weapons.  After McMahan exited his pickup, and during the 1 to 1½ minutes that the two were situated at the rear of the vehicle before the arrest was made, Officer Cunningham observed signs that McMahan had used methamphetamine or some other drug.  McMahan continued to appear nervous, and he kept sticking his hands in his pockets.  It was necessary for Officer Cunningham to instruct McMahan three times to keep his hands out of his pockets, and he believed that McMahan posed an imminent threat.

Taken together, these facts show that during the entire period of approximately six minutes that elapsed between the time of the traffic stop and the time of the arrest, Officer Cunningham had an objectively reasonable suspicion that additional criminal activity──i.e., more than the traffic violation──was afoot, that is, that McMahan was, or was about to be, engaged in illegal drug-related activity.

V

A principal premise of McMahan's suppression motion is that Officer Cunningham arrested him only after he refused to consent to the search of his pickup truck. He argues that it was always the officer's intention to search his vehicle, and that the arrest was the direct result of his failing to grant consent to search. This argument does not warrant suppressing the seized evidence.

It is well settled that, when a police officer lawfully arrests a vehicle occupant, he may search the person and the passenger compartment (including any containers found therein) incident to the arrest. *See New York v. Belton*, 453 U.S. 454, 460-61 (1981); *Michigan v. DiFillippo*, 443 U.S. 31, 35 (1979). It is also clear that an arrest for driving on the improved shoulder of a Texas highway is lawful. *See* Tex. Transp. Code Ann. § 543.001 (Vernon 1999) (authorizing peace officers to make arrests for traffic violations);[3] *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001) (holding that arrests for traffic violations are not unconstitutional). Finally, it is settled that the subjective motive of the officer in effecting the arrest is irrelevant. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (stating that officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable

---

[3]There are exceptions to the power to arrest for violations of the Texas Transportation Code, but none applies here.

cause"); *Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001) (per curiam) (holding that arrests for traffic offenses are valid even if used as pretext for performing search).[4]  Accordingly, regardless of Officer Cunningham's subjective motive for arresting McMahan, he lawfully searched McMahan and his vehicle, during which he discovered and seized the evidence that McMahan seeks to suppress.  Therefore, McMahan is not entitled to suppress the seizure of the evidence.

\* \* \*

McMahan's July 23, 2007 motion to suppress evidence is denied.

**SO ORDERED.**

August 30, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[4] Officer Cunningham also testified credibly that he based his decision to arrest McMahan on his belief that it was unsafe to permit McMahan to return to his vehicle and drive off, because he might have a weapon.  He also acted based on McMahan's nervousness, his links to other people involved in suspicious drug activity, his criminal record, the information the hotel clerks had provided concerning suspicious activity, and information about people coming and going through a hotel window with a duffel bag.